

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF TENNESSEE

IN RE:

JIMMY MARCELL MORRIS,                       Case No. 3:10-BK-04143
      Debtor.                                         Chapter 11
JIMMY MARCELL MORRIS,
      Plaintiff,

v.                                                       Adv. Pro. No. 3:10-ap-00242

GEORGE C. PAINE, II, KEITH M. LUNDIN,
MARIAN F. HARRISON, MATTHEW T.
LOUGHNEY, SEVERAL COURT EMPLOYEES
AND OTHER UNKNOWN ACTORS,
HENRY E. HILDEBRAND, III, BETH R.
DERRICK, TRACY L. SCHWEITZER,
AND RICHARD F. CLIPPARD,

      Defendants.

**MEMORANDUM OPINION RE: PLAINTIFF'S DEMAND FOR SUBSTITUTION AND RECUSAL JUDGE G. HARVEY BOSWELL FOREVER DISQUALIFIED FROM THIS AND ANY OTHER CASE THAT HAS TO DEAL WITH JIMMY MARCEL MORRIS FOR HIS OBVIOUS FAILURE TO BE IMPARTIAL, UNBIAS, AND DO FAIR & HONEST SERVICE TO PROTECT OTHER JUDGES AND OFFICERS OF THE COURT FROM PROSECUTION IS AN <u>ABANDONMENT</u> OF OATH & DUTY IN THE BANKRUPTCY COURT**

      The Plaintiff in this matter filed his demand for substitution and recusal of this Judge on October 6, 2010. In his motion, the Plaintiff alleged that this judge is a "TREASONIST who is aiding in the destruction and decimally of the United States from within and has aided in the Financial Turmoil of American through his alleged judicial acts; who thinks that he can place himself and others ABOVE THE LAW & THE CONSTITUTION . . . ." In support of his motion, the Plaintiff alleges that this Judge is violating the United States Constitution by imposing a 2-year ban on the Plaintiff re-filing a bankruptcy petition. Morris has also alleged that this Judge "by trickery

and deceit, has enabled the government has converted all executive and judicial officers into working for the corporate United States for the benefit of the corporation and not for the benefit of "We the People' " and that, in so doing, this Judge has violated his oath of office.

Morris filed his chapter 11 petition on April 19, 2010. That is his fifth bankruptcy filing in the Middle District of Tennessee since 1999. Case number 99-1491 was filed on February 19, 1999, and Morris received a chapter 7 discharge in that case on August 10, 1999. Morris filed his first chapter 13 petition on July 14, 2004, case number 04-8625. That case was dismissed on February 27, 2009, for failure to pay. Morris filed a second chapter 13 petition on May 13, 2009, case number 09-5445. That case was dismissed August 7, 2009, for failure to appear at the § 341 meeting of creditors. Morris filed his third chapter 13 petition on November 12, 2009, case number 09-13060. That case was dismissed on April 2, 2010, for failure to pay, failure to comply with § 109(h), and failure to provide unsecured creditors with at least as much as they would have received in chapter 7.

On October 6, 2009, this Court entered an order granting the United State's Trustee's Motion to Dismiss Morris's case with prejudice for 2 years. The Court based its decision on several factors. First, the Court found that Morris has not complied with 11 U.S.C. § 109(h) because he failed to attend the pre-petition credit counseling that is a pre-requisite to filing for bankruptcy relief. The Court also found that Morris has not complied with 28 U.S.C. § 1930(a)(3) and (6) because he has not paid his U.S. Trustee quarterly fees or his case filing fee. In support of its decision to dismiss the case with prejudice, the Court found that Morris was a bad faith serial filer who had made little if any effort to comply with his statutory duties as a debtor under the Bankruptcy Code. The Court also found that Morris consistently tried to stall the proceedings in this court:

> Although the Court has only been involved in Morris's case for a short time, his behavior at various hearings has only reinforced the Court's conclusion that Morris is acting in bad faith. The Court has taken large amounts of time to try and explain the statutory requirements to Morris only to have him appear at the next hearing and feign ignorance. His has accused various judges and clerk's office staff of attempting to thwart his efforts to obtain bankruptcy relief when the only thing they have done is required him to comply with the Bankruptcy Code.

Federal Rule of Bankruptcy Procedure 5004 provides that the recusal of a bankruptcy judge from a proceeding, contested matter or the case is governed by 28 U.S.C. § 455. The relevant portions of § 455 provide that:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
> (1) Where he has a *personal* bias or prejudice concerning a party, or *personal* knowledge of disputed evidentiary facts concerning the proceeding;

28 U.S.C.A. § 455(a)-(b) (emphasis added). If any of the statutory grounds for recusal is shown, a court has a duty to recuse itself. *Rhiel v. Hook* (*In re Johnson*), 408 B.R. 123, 125 (Bankr. S.D. Ohio 2009) (citing *Barna v. Haas* (*In re Haas*), 292 B.R. 167, 177 (Bankr. S.D. Ohio 2003)). If, however, none of the grounds exist, a court has no recusal obligation. *Id*. The party bringing a motion for recusal carries a high burden of proof. *Consolidated Rail Corp. v. Yashinsky*, 170 F.3d 591, 597 (6th Cir. 1999). "Because a judge is presumed impartial, a party seeking to disqualify the judge bears a substantial burden of proving otherwise." *Jane Doe v. Cin-Lan, Inc.*, 2010 WL 419988, *2 (E.D. Mich. 2010) (citing *Scenic Holding, LLC v. New Bd. of Trustees*, 506 F.3d 656, 662 (8th Cir. 2007).

Under § 455(a), " '[t]he standard for determining whether a judge should be disqualified is an objective one: whether a reasonable person with knowledge of all facts would conclude that the judge's impartiality might reasonably be questioned.' " *Id.* The standard is "not based 'on the subjective view of the party.' " *Wheeler v. Southland Corp.*, 875 F.2d 1246, 1251 (6th Cir. 1989) (citation omitted). Recusal under "§ 455(a) is triggered by an attitude or state of mind so resistant to fair and dispassionate inquiry as to cause a party, the public, or a reviewing court to have reasonable grounds to question the neutral and objective character of a judge's rulings or findings." *Liteky v. United States*, 510 U.S. 540, 557-58, 114 S.Ct. 1147, 1158 (1994).

Under § 455(b), the standard for determining if recusal is mandated is somewhat more subjective. *Liteky*, 510 U.S. at 553, n.2; *Jane Doe*, 2010 WL 419988 at *2. "The question under § 455(b)(1) is whether the judge holds a personal bias or prejudice against the movant." *In re Nicole Energy Servs., Inc.,*, 423 B.R. 840, 846 (Bankr. S.D. Ohio 2010); *Pashaian v. Eccelston Props., Ltd.*, 88 F.3d 77, 83 (2nd Cir. 1996).

Under either § 455(a) or (b), the alleged bias or impartiality may arise out of extrajudicial conduct, i.e., "knowledge that the judge has acquired that is not based on either the proceedings before him or on other legal proceedings involving the same parties." *Schilling v. Heavrin* (*In re Triple S Restaurants, Inc.*), 422 F.3d 405, 417 (6th Cir. 2005). Although an extrajudicial source is the common basis for recusal under § 455, it is not the only basis for establishing bias or prejudice. *Liteky*, 510 U.S. at 551. "A favorable or unfavorable predisposition can also deserve to be characterized as 'bias' or 'prejudice' because, even though it springs from the facts adduced or the events occurring at trial, it is so extreme as to display clear inability to render fair judgment." *Id.* However, the predisposition must be wrongful or inappropriate in order to serve as a basis for recusal under either § 455(a) or (b). *Id.* at 551-52:

> The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task. As Judge Jerome Frank pithily put it: "Impartiality is not gullibility. Disinterestedness does not mean child-like innocence. If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions." Also not subject to deprecatory characterization as "bias" or "prejudice" are opinions held by judges as a result of what they learned in earlier proceedings. It has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant.
>
> . . . .
>
> . . . It is enough for present purposes to say the following: First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves, (i.e., apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an

4

>   extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. . . . *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration-even a stern and short-tempered judge's ordinary efforts at courtroom administration-remain immune.

Liteky, 510 U.S. at 550-51, 555-56 (citations omitted); *Schilling v. Heavrin* (*In re Triple S Restaurants, Inc.*), 422 F.3d 405, 417 (6th Cir. 2005) (citations omitted) ("A judge's unfavorable disposition toward an individual or his case, however, does not typically constitute judicial 'bias or prejudice.'  Rather, '[t]he words [bias and prejudice] connote a favorable or unfavorable disposition or opinion that is somehow *wrongful* or *inappropriate,* either because it is undeserved, or because it rests upon knowledge that the subject ought not to possess ... or because it is excessive in degree.' ").

In the case at bar, this Court granted the U.S. Trustee's motion to dismiss the case with prejudice based upon its observations of Morris's actions in this case, i.e., information gained in the course of this proceeding.  The Court based its decision to dismiss under 11 U.S.C. § 1112 on Morris's failure to comply with *statutory requirements* of the Bankruptcy Code in *this* case: Morris did not obtain the 11 U.S.C. § 109(h) pre-petition credit counseling nor did he pay the chapter 11 filing fee or the U.S. Trustee quarterly fees in compliance with 28 U.S.C. § 1930.  Using its discretion, the Court determined that Morris's case should be dismissed with prejudice based on his behavior in *this* case and his *prior* cases.  This case is Morris's fifth bankruptcy filing since 1999.  Morris's most recent three cases, all chapter 13 filings, were all dismissed for Morris's failure to comply with his statutory duties as a debtor:  failure to pay, failure to appear, and failure to comply with the chapter 13 plan requirements of § 1325.  The Court concluded that this pattern of filing unsuccessful cases supported a finding that Morris was a bad faith serial filer.

Morris testified at the hearing on the U.S. Trustee's motion to dismiss that he has not made a payment on his car note or his mortgage in over a year.  He disputes the validity of the lien on his residence, yet he has taken no action to determine the validity of the lien in this case.  He has also been less than cooperative in satisfying the few statutory duties he has undertaken in this case.  He just attended his § 341 meeting of creditors on September 20, 2010–over five months after the case

5

was filed. As of the date the case was dismissed, Morris had also failed to attend the initial debtor's conference with the U.S. Trustee's office. Morris has made three appearances before this Court. As the Court noted in its opinion dismissing Morris's bankruptcy case, "[t]he Court has taken large amounts of time to try and explain the statutory requirements to Morris only to have him appear at the next hearing and feign ignorance." During each of Morris's court appearances, he has attempted to act confused and bewildered despite being given specific instructions by the Court each and every time as to what would be expected of him.

There is simply nothing in this case that supports a finding of bias or impartiality under an objective standard sufficient to warrant recusal under 28 U.S.C. § 455(a) or (b)(1). The Court has based its rulings on Morris's failure to comply with his *statutory* duties of the Bankruptcy Code. The Court has explained these duties to Morris on more than one occasion in a sincere and honest effort to assist him understand the bankruptcy process. The decision to dismiss his case for failure to comply with his statutory duties is mandated by the Bankruptcy Code. The decision to make the dismissal of his case be with prejudice is one which is placed within the discretion of the court and amply supported by caselaw and the facts of this case. Morris has failed to comply with the requirements the Bankruptcy Code places not just on him, but on all debtors.

In dismissing Morris's case based on his own failure to comply with the Code, the Court is not succumbing to any judicial or extrajudicial source that would give rise to grounds for recusal. Instead, it is simply doing what it would do in any case in which the debtor fails to comply with the statutory requirements imposed upon him. Although the Court realizes that the bankruptcy process can be a confusing one at times, especially without the guidance of an attorney experienced in bankruptcy matters, Morris made the decision to represent himself. A debtor is well within his rights to do so; however, appearing before the court in a *pro se* status does not alleviate a debtor of the procedural and substantive duties imposed upon him by the Bankruptcy Code. *In re Dow Corning Corp.*, 255 B.R. 445, 466 (E.D. Mich. 2000); *In re de Kleinman*, 136 B.R. 69, 71 (Bankr. S.D.N.Y. 1991) (". . . once Debtor determined to represent herself *pro se* she undertook the responsibility to comply with the relevant rules of procedural and substantive law."). And when that *pro se* debtor does not fully understand the law or procedure, he must suffer the consequences his failure to comply therewith brings. *In re Russell*, 392 B.R. 315 (Bankr. E.D. Tenn. 2008). He certainly cannot use his

6

own failures to assert a claim of bias or impartiality of the Court without demonstrating that there is more to blame than his own ineptitude.